JUDGE DAVID BRIONES

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION



| | |
|---|---|
| ERIK SALAIZ, | §<br>§<br>§ |
| **Plaintiff,** | §<br>§ |
| v. | §<br>§ |
| AMERICA'S LIFT CHAIRS, LLC a Georgia<br>Limited Liability Company and JASON JUE | §<br>§<br>§ |
| | §<br>§ |
| **Defendants.** | §<br>§ |

# EP22CV0026

## PLAINTIFF'S ORIGINAL COMPLAINT

## PARTIES

1. Plaintiff ERIK SALAIZ ("Plaintiff") is a natural person and is a citizen of the Western District of Texas and was present in the Western District of Texas during all calls at issue in this case.

2. Defendant AMERICA'S LIFT CHAIRS, LLC ("ALC") is a Limited Liability Company organized and existing under the laws of Georgia and can be served via registered agent Jason Jue at 2 Village Walk, Suite 204 Savannah, GA 31411.

3. Defendant JASON JUE ("Jue") is a natural person, resident of Georgia, and Chief Executive Officer of America's Lift Chairs, LLC and can be served at 2 Village Walk, Suite 204 Savannah, GA 31411.

4. Defendant ALC and JUE (together "Defendants")

## NATURE OF ACTION

1

5. Plaintiff brings this Complaint and Demand for Jury Trial against Defendants to stop placing illegal robo and unauthorized calls to Plaintiff's personal cell phone and to obtain redress as authorized by statute.

6. Defendants offer lift chairs to consumers. As part of marketing their services, Defendant ALC and their agents placed illegal robocalls to Plaintiff's cell phone that using an artificial or prerecorded voice advertisement.

7. Defendant ALC make unsolicited and unauthorized phone calls to thousands of consumers using artificial or prerecorded voice messages to sell their lift chair.

8. Defendants did not obtain express written consent from Plaintiff prior to calling his cell phone, and Defendants are therefore liable under the Telephone Consumer Protection Act 47 U.S.C. § 227 (the "TCPA") and its implementing regulation, 47 C.F.R. § 64.1200(a)(2).

9. Congress enacted the TCPA in 1991 to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10. The TCPA targets unauthorized calls exactly like the ones alleged in this case, based on Defendant ALC's use of technological equipment to spam consumers on a grand scale without their consent.

11. By placing the calls at issue, Defendants have violated the statutory rights and privacy of Plaintiff and caused him to suffer damages that are recognized by statute.

12. Plaintiff therefore seeks an injunction requiring Defendants to stop calling his personal cell phone, as well as an award of actual and statutory damages, civil penalties, costs and reasonable attorneys' fees.

## JURISDICTION AND VENUE

13. This Court has federal subject matter jurisdiction under 28 U.S.C. § 1331, as this case arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, which is a federal statute.

14. This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

15. This Court has personal jurisdiction over Defendants because they conduct business in this District and in the State of Texas and because the events giving rise to this lawsuit occurred in this District.

16. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendants regularly conducts business in the state of Texas and in this District, and because the wrongful conduct giving rise to this case occurred in this District.

## FACTUAL ALLEGATIONS

17. Plaintiff's personal cell phone (915) 252-9280 is on the National-Do-Not-Call-Registry.

18. Defendants offer Lift Chair products to consumers.

19. Defendant Jue controls and dominates ALC.

20. Defendant Jue approves of the contracts with the telemarketers who make illegal robocalls with artificial or prerecorded voice messages to thousands of consumers cellular and residential phone numbers.

21. Defendant Jue authorizes the payments to the telemarketers.

22. Defendant Jue pays the telemarketers out of bank accounts he owns and controls.

23. Defendant Jue provides instruction and guidance on who to solicit and the minimum qualifications of potential clients.

24. Defendant TRA has been sued before for TCPA violations (case # 4:2021cv00245) and (case # 1:2021cv06808) Defendant Jue continues to knowingly and willfully authorize telemarketers to place illegal robocalls (like the calls alleged in this complaint) to thousands of consumers en mass using an artificial or pre-recorded voice message.

25. Defendant Jue has full control over ALC and has the authority to stop the illegal robocalls however has refused to do so because it benefits defendants financially.

26. Defendant Jue approves of the scripts when calling consumers (like the ones alleged in this complaint) that start with an artificial or prerecorded voice message that says " Hi this is Kristen I'm with senior aid helper and the reason for the call is um were reaching out to people who recently used one of our partners medical or hearing aid devices or other quality life related products just to let them know about the promotion we're running. So the good news is one of our partners a leading lift chair company in America is running a 14 day risk free trial so just imagine a lazy boy chair but much better um the chair gives you a complete body massage from head to toe it also provides heat to the entire body um also the chair lifts you up in a standing position with a simple push of a button and you get to try the chair risk free for 14 days and there's nothing to lose

because we deliver and setup the chair um and if you don't like it for any reason we send someone to pick it up and take it back for free sounds great right? Now the chair can recline to many different positions um one position that is very beneficial is the sleeping position you can lay completely flat like your laying in a bed for a relaxing comfortable night sleep um there's also a tv position to watch all your favorite tv shows which is my personal favorite and the lift position to help safely get you out of the chair and as I mentioned before the sleep position is to help you get a good night's rest or even an afternoon nap now because of your illness you have to take every step possible to make sure your are not getting worse um and our chair can help sooth the way any aches and pains and also help you get a good night's rest now remember the chair also lifts you into a standing position which is going to be a huge help for eliminating pressure off your joints um and if you don't like the chair for any reason and if it just doesn't make you feel good we're going to come pick it up and take it back free of charge okay? Great, now what I'm going to do now is bring one of our supervisors on the line to go over the rest of the details and let you know how to take advantage of the 14 day risk free trial okay um and I'll stay on the line to make sure that your connected so please just hold on."

27. Each and every call Defendants made to Plaintiff's personal cell phone (915) 252-9280 all started with the same artificial or prerecorded voice message when Plaintiff answered.

28. Plaintiff is aware of four unauthorized phone calls made within 30 days to his personal cell phone (915) 252-9280 from Defendants. With information and belief there was more unauthorized phone calls made to Plaintiffs personal cell phone from Defendants that are unknown at this time but will be revealed during discovery.

29. On December 29, 2021, Plaintiff received an unauthorized phone call made to his personal cell phone (915) 252-9280 from Defendants from phone number (980) 982-8881.

30. Plaintiff answered the call and heard an artificial or prerecorded voice message that said "Hi this is Kristen I'm with senior aid helper and the reason for the call is um were reaching out to people who recently used one of our partners medical or hearing aid devices or other quality life related products just to let them know about the promotion we're running. So the good news is one of our partners a leading lift chair company in America is running a 14 day risk free trial so just imagine a lazy boy chair but much better um the chair gives you a complete body massage from head to toe."

31. Plaintiff was annoyed and aggravated for continuing to receive the same call three times prior to this occasion and followed the prompts to speak to a live representative for the sole purposes of identifying the company responsible for the illegal robocalls.

32. Plaintiff was then transferred to a live representative named Ashley that stated she was with America's Lift Chair. She then stated "I want to say thank you Mr. Erik and congratulations on your risk-free lift chair trial."

33. Ashley went over the benefits and features of the lift chair and then solicited Plaintiff for Defendants product.

34. Plaintiff asked Ashley where their company was based out of and Ashley stated their company is located in Savannah, GA and their website is https://www.americasliftchair.com which provided Plaintiff the information to the company responsible for the illegal robocalls.

35. Table A displays the calls made by the defendants

| Date | Time | Caller ID |
|------|------|-----------|
| 12/4/2021 | 2:35pm | 443-952-4507 |
| 12/6/2021 | 4:56pm | 760-300-1768 |
| 12/22/2021 | 12:30pm | 432-200-0603 |
| 12/29/2021 | 11:22am | 980-982-8881 |

36. Defendants employ outrageous, aggressive, and illegal sales techniques that violate multiple federal laws and state consumer statutes.

37. Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

38. On information and belief, the Defendants did not have a written do-not-call policy while it was sending Mr. Salaiz the unsolicited calls.

39. The Defendants never sent Mr. Salaiz any do-not-call policy. Plaintiff sent an internal do-not-call policy request to info@americasliftchair.com.

40. On information and belief, the Defendants did not train its agents who engaged in telemarketing on the existence and use of any do-not-call list.

41. Defendant Jue participated in, facilitated, directed, authorized, knew of or willfully ignored the false and misleading sales practices and unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

42. Defendants have knowledge of and have adopted and maintained TCPA violations as a sales strategy. This is amply supported by the complaints Defendants receive that are available from the Better Business Bureau ("BBB"). The full scale of the complaints

Defendants receive is not currently available to Plaintiff but will be revealed through discovery to amplify what is shown below.

43. Defendants refuse to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendants financially.

44. Plaintiff never consented to receive the calls alleged herein. Plaintiff had no relationship with Defendants prior to the calls alleged herein.

## DEFENDANT JUE IS PERSONALLY LIABLE

45. Defendant Jue refuses to take any action to stop or curtail the unlawful sales practices and robocalling because these practices benefit Defendant Jue.

46. "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable.  See *United States v Pollution Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

47. The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001)

48. Quoting Texas v. American Blastfax:

8

Case 4:22-cv-00113-RSB-CLR   Document 1   Filed 01/19/22   Page 9 of 17

The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved. Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers. As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct. Congress surely did not intend to permit such a result in passing the TCPA.

To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations. They were the two persons who controlled all of Blastfax's day-to-day operations. They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful contuct that violate the TCPA, and/or directly controlled and authorized this conduct. And they did so with their eyes and pocketbooks wide open. After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA. On February 9, 2001, they knew they were. Yet they continued to direct their company to send unsolicited intrastate fax advertisements. This is fare more than a simple derivative liability case. Accordingly, the Court *899 holds defendants Greg and Michael Horne are jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001)

49. The Same Court held that corporate officers were also personally liable for DTPA violations

The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001

50. At all times material to the Complaint, acting alone or in concert with others, Defendant

Jue has formulated, directed, controlled, had the authority to control, or participated in

9

the acts and practices of Defendant ALC including the acts or practices set forth in this Complaint.

51. Defendant Jue is the principal director and operator of Defendant ALC and controls the day-to-day operations of ALC and directed their employees, agents, salespersons, and solicitors to make TCPA violating phone calls and to solicit their lift chair product.

52. Defendant Jue approved the telemarketing scripts, signed the contracts, paid commissions for the illegal behavior, and directed the illegal calls to be made for his financial benefit.

53. Defendant Jue knowingly and willfully ignores the law. He continues to solicit Defendants ALC's lift chair product via robocalls with artificial or prerecorded voice messages.  These violations are the direct result of the instructions Defendant Jue has given to his agents, employees, solicitors, salespersons, and others that carry out his schemes.

54. Defendant Jue is not merely a bystander.  His is the mastermind that schemed, planned, directed, initiated and controlled the illegal and fraudulent behavior.

55. Defendant Jue is well aware his conduct violated the TCPA and Tex. DPTA and refused to alter their behavior.  Defendant Jue is the sole director of ALC and the only person with the power to make the unlawful, fraudulent, and unethical behavior stop.  Yet, Defendant Jue has taken no steps to stop the behavior because the behavior benefits Defendants financially.  Defendant Jue breaks the law with his eyes and pocketbooks wide open.

56. Defendants should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via the Tex. DTPA because they actually committed the

conduct that violated the TCPA and Tex. DTPA, and/or they actively oversaw and directed this conduct.

57. Defendant Jue should be held liable because to do otherwise would simply allow him to simply dissolve ALC and set up a new corporation and repeat their conduct.  This would result in both the TCPA and DTPA being unenforceable.

### The Plaintiff's cell phone is a residential number

58. The calls were to  the Plaintiff's cellular phone 9280 which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### The Texas Business and Commerce Code 305.053

59. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

60. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

**Violations of the Texas Business and Commerce Code § 302.101**

61. The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having registration certificate and bond on file with the Texas Secretary of State.

62. Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

63. The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish."  Tex. Bus. & Com. Code § 17.50.

64. Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made."  Tex. Bus. & Com. Code § 302.101(a).

65. Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation of §302.101.

**INJURY, HARM, DAMAGES, and ACTUAL DAMAGES**

**AS A RESULT OF THE CALLS**

66. Plaintiff has been annoyed, harassed, and irritated by robocalls placed by the Defendants and other similar companies.

67. Plaintiff has been denied the use of his phone, enjoyment of his phone, and had the

functionality of his phone decreased because of unnecessary charging, erosion of phone

memory, and had his privacy invaded by the harassing robocalls.


### FIRST CAUSE OF ACTION

**Willful and/or Knowing Violation of 47 U.S.C. § 227**
**Telephone Consumer Protection Act of 1991**
**(Against all Defendants)**

68. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

69. Defendants and/or their agents placed calls to Plaintiff's cellular telephone.

70. Plaintiff never consented to receive calls from Defendants.  Plaintiff has no relationship
    with Defendants.

71. Defendants' calls were made for purposes of advertising and marketing Defendants' lift
    chair product.  These calls constituted commercial advertising and telemarketing as
    contemplated by the TCPA.

72. The calls were made using an artificial or prerecorded voice message to the cellular
    phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

73. As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy
    of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B),
    entitling Plaintiff to recover $500 in statutory damages for each violation and an
    injunction requiring Defendants to stop their unlawful calling campaigns.

74. Not only did Defendants make these violating calls, Defendants and/or their agents did so
    "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

75. If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

**SECOND CAUSE OF ACTION**
**Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)**
**(Against All Defendants)**

76. Plaintiff incorporates the forgoing allegations as if fully set forth herein.

77. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

   a.   written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [1];

   b.   training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [2]; and,

   c.   in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[3]

78. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

79. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

---

[1] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order

## THIRD CAUSE OF ACTION
### Violations of The Texas Business and Commerce Code 305.053

80. Plaintiff incorporates the foregoing allegations as if set forth herein.

81. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Salaiz cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

82. Plaintiff is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

83. Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c)

## FOURTH CAUSE OF ACTION

### (Violations of The Texas Business and Commerce Code 302.101)

84. Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

85. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101,** by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

86. Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302**.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for four calls.

E.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

G.      An award to Mr. Salaiz of damages, as allowed by law under the TCPA;

H.      An award to Mr. Salaiz of interest, costs and attorneys' fees, as allowed by law and equity

I.      Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.


January 18, 2022                         Respectfully Submitted,

16

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-252-9280
Salaiz.ep@gmail.com